## HAVER *v.* YAKER.

Although it is true, as a principle of international law, that, as respects the rights of either government under it, a treaty is considered as concluded and binding from the date of its signature, and that in this regard the exchange of ratifications has a retroactive effect, confirming the treaty from its date; a different rule prevails where the treaty operates on individual rights. There the principle of relation does not apply to rights of this character which were vested before the treaty was ratified, and in so far as it affects *them* it is not considered as concluded until there is an exchange of ratifications.

ERROR to the Court of Appeals of Kentucky; the case being thus:

One Yaker, a Swiss by birth, who had come many years ago to the United States and become a naturalized citizen thereof, died in Kentucky in 1853, intestate, seized of real estate there. He left a widow, who was a resident and citizen of Kentucky, and certain heirs and next of kin, aliens and residents in Switzerland.

By the laws of Kentucky in force in 1853, the date of his death, aliens were not allowed to inherit real estate except under certain conditions, within which Yaker's heirs did not come, and if the matter was to depend on those laws, the widow was, by the laws then in force in Kentucky, plainly entitled to the estate.

However, in 1850, a treaty was " concluded and signed " by the respective plenipotentiaries of the two countries, between the Swiss Confederation and the United States,* upon the proper construction of which, as Yaker's heirs asserted— although the widow denied that the construction put upon

* 11 Stat. at Large 587.

the treaty by the heirs was a right one—these heirs were entitled to take and hold the estate. The treaty provided by its terms that it should be submitted on both sides to the approval and ratification of the respective competent authorities of each contracting party, and that the ratifications should be exchanged at Washington as soon as circumstances should admit. It was so submitted, but was not duly ratified, nor were the respective ratifications exchanged in Washington till November 8th, 1855, at which time the ratification and exchange was made. And on the next day the President, by proclamation—the treaty having been altered in the Senate—made the treaty public.

In 1859 the Swiss heirs, who had apparently not heard before of their kinsman's death, instituted proceedings to have the real estate of their kinsman, now in possession of the widow, assigned to them, and arguing that on a right construction of the treaty it was theirs.

But a preliminary question, and in case of one resolution of it, a conclusive objection to their claim was here raised; the question, namely, at what time the treaty of 1850–55, as it regarded private rights, became a law. Was it when it bore date, or was it only when the ratifications were exchanged between the parties to it? If not until it was ratified, then there was no necessity of deciding whether by its terms the heirs of Yaker had any just claim to this real estate, because in no aspect of the case could the treaty have a retroactive effect so as to defeat the title of the widow, which vested in her, by the law of Kentucky of 1853, on the death of her husband.

The Court of Appeals of Kentucky, where the heirs set up the treaty as a basis of their title, decided that it took effect only when ratified, and so deciding against their claim, the case was now here for review under the twenty-fifth section of the Judiciary Act.

*Messrs. Carlisle and McPherson, for the heirs,* citing Kent's Commentaries,* and *United States* v. *Reynes,†* in this court,

---

\* Vol i, 170.                              † 9 Howard, 148, 289

contended that a treaty binds the contracting parties from its conclusion; and that this is understood to be from the day it is signed. If that view was right, the treaty was operative at the date of Yaker's death, and as they argued carried the estate to the heirs.

*Mr. Montgomery Blair, contra; a brief of Messrs. Porter and Beck being filed on the same side,* argued that while the position of the other side might be admitted so far as respected the contracting governments, the position was not true as respected private rights. And this for a good reason. For that with us a treaty must be agreed to by the Senate, and this in secret session, before it becomes a law. While before the Senate it may be amended and largely altered. This particular treaty, the President's proclamation shows, was amended, and for aught that appears to the contrary, the very article upon which the heirs of Yaker now found their claim, may have been the only amendment made, and it may have been inserted long after Yaker's death and the accrual of the widow's rights.

If this view is right we need not inquire into the meaning of the treaty.

Mr. Justice DAVIS delivered the opinion of the court.

It is undoubtedly true, as a principle of international law, that, as respects the rights of either government under it, a treaty is considered as concluded and binding from the date of its signature. In this regard the exchange of ratifications has a retroactive effect, confirming the treaty from its date.* But a different rule prevails where the treaty operates on individual rights. The principle of relation does not apply to rights of this character, which were vested before the treaty was ratified. In so far as it affects them, it is not considered as concluded until there is an exchange of ratifications, and this we understand to have been decided by this court, in Arredondo's case, reported in 6th Peters.† The reason of

---

* Wheaton's International Law, by Dana, 336, bottom paging.

† Vol. vi, p. 749.

the rule is apparent.   In this country, a treaty is something more than a contract, for the Federal Constitution declares it to be the law of the land.   If so, before it can become a law, the Senate, in whom rests the authority to ratify it, must agree to it.    But the Senate are not required to adopt or reject it as a whole, but may modify or amend it, as was done with the treaty under consideration. . As the individual citizen, on whose rights of property it operates, has no means of knowing anything of it while before the Senate, it would be wrong in principle to hold him bound by it, as the law of the land, until it was ratified and proclaimed.   And to construe the law, so as to make the ratification of the treaty relate back to its signing, thereby divesting a title already vested, would be manifestly unjust, and cannot be sanctioned.

These views dispose of this case, and we are not required to determine whether this treaty, if it had become a law at an earlier date, would have secured the plaintiffs in error the interest which they claim in the real estate left by Yaker at his death.

JUDGMENT AFFIRMED.