## In re SUTHERLAND.

### (District Court, D. Oregon. December 17, 1892.)

SEAMEN—DESERTION.

A seaman who signs articles for a voyage, and fails to render himself on board in due season, is a deserter.

(Syllabus by the Court.)

On Habeas Corpus.

Alfred F. Sears, Jr., for petitioner.
Raleigh Stott, for respondent.

DEADY, District Judge. On December 7, 1892, George Sutherland duly shipped at San Francisco, before the British consul, for a voyage on the British bark Invergarry, to a port of discharge in the United Kingdom. At the time, the vessel was lying at Astoria, Or., loaded and ready to clear for Queenstown. At the time of signing the articles, Sutherland received $40 advance on his wages, and at once proceeded to Astoria, on the steamship Queen, at the expense of the bark, where he arrived on the morning of the 9th.

There he refused and neglected to join the vessel, being thereto persuaded by the petitioner, Peter Grant, and his associates, certain boarding-house keepers at Astoria.

The master of the Invergarry, Mr. James Crombie, then instituted proceedings under a supposed treaty between Great Britain and the United States, concerning deserters from merchant vessels, signed at Washington on June 3, 1892, to have said Sutherland returned to the

vessel as a deserter, which resulted in his being placed thereon in the custody of the master, where he said he desired to remain and proceed upon the voyage.

On the 10th inst., on the petition of Peter Grant, a writ of habeas corpus issued from this court, directed to the said master, commanding him to produce the body of Sutherland before the same, with the cause of his detention.

On the 12th inst. the master made a return setting forth the above facts, and the day after made a supplemental return, to the effect that Sutherland had escaped, at Portland, that morning, and he was unable further to comply with the writ.

The petitioner demurred to the return, and the case was argued by counsel.

The shipping articles were annexed to the return, and made a part thereof. From these it appears that Sutherland "agreed to make the voyage from San Francisco to Astoria, there to join the Invergarry and proceed on her to a port of discharge," as above stated, and to render himself "on board at once," and to be obedient to all lawful commands of the master, "whether on board, in boats, or on shore."

It does not appear that the treaty aforesaid, under which the proceedings before the vice consul, at Astoria, took place, has ever been confirmed by the United States senate.

The constitution (article 2, § 2) gives the president power to make treaties, "with the advice and consent of the senate," and not without it. So far as appears, the senate not having advised and consented to this so-called "treaty," it has no legal force, and the proceedings taken thereunder are of no avail.

But if the seaman was legally bound to render himself on board the Invergarry, as he certainly was, and he afterwards came into the custody of the master, he was lawfully there, and the writ must be discharged.

The voyage commenced at San Francisco on the Queen, and the fact that it was to be prosecuted from Astoria onward in the Invergarry makes no difference in the status or obligation of the sailor. A contract is complete when the articles are signed, and, unless they contain a provision postponing his going on board, the seaman is bound to render himself on board at once, or else he becomes a deserter. 2 Pars. Shipp. & Adm. 99.

These articles required Sutherland to render himself on board "at once," which he did, and afterwards deserted, at Astoria.

This was not a contract of shipment on the Queen and to ship on the Invergarry at Astoria after reaching there. Sutherland shipped for the whole voyage from San Francisco to Europe,—from San Francisco to Astoria in the Queen, and thence forward in the Invergarry.

By failing to render himself on board of either vessel, or absenting himself therefrom, he became a deserter.

The writ is dismissed, and judgment is given against the petitioner for costs.