No. 15,348.

PEOPLE EX REL. BURKE *v.* DISTRICT COURT OF THE SECOND JUDICIAL DISTRICT ET AL.

(141 P. [2d] 893)

Decided June 1, 1943. Rehearing denied October 4, 1943.

Mr. JAMES T. BURKE, District Attorney, Mr. DAVID ROSNER, Assistant, for the people.

Mr. WILBUR M. ALTER, Mr. CHARLES T. MAHONEY, for respondents.

*En Banc.*

MR. JUSTICE JACKSON delivered the opinion of the court.

THIS case in its origin and nature is similar to *People ex rel. Carroll v. District Court,* 106 Colo. 89 (1940), 101 P. (2d) 26. In that case the relator, as district attorney of the second judicial district, sought in this court a writ of mandamus, compelling the district court of that district to impose a sentence corresponding to a penalty within the limits provided by law for a crime. The relator in the instant case asks for a similar order. The crime in the former case was voluntary manslaughter, as to which a jury had duly returned a verdict of guilty against one Siraguso. The crime in the instant case was burglary with force, to which one Anderson on January 6, 1943, entered a plea of guilty, evidence being later taken which corroborated his plea. In both the Carroll case, supra, and the present one, the controversy arose from the district judge's attempt to suspend the imposition of sentence regardless of the fact that the district attorney refused to approve such suspension. In the instant case the district attorney's disapproval of probation was filed in writing. Both cases involve section 1, chapter 140, '35 C.S.A. (S.L. '31, c. 136, §1, entitled "Probation"). It is set forth in full in the Carroll case, supra.

We here repeat the first sentence thereof: "When it shall appear to the satisfaction of the judge of any district court that the ends of justice and the best interests of the public, as well as the defendant, will be subserved thereby, the court shall have power, with the approval of the district attorney after conviction or after a plea of guilty or nolo contendere, for any crime or offense excepting murder of the first and second degree, to suspend the imposition or execution of sentence for such period and upon such terms and conditions in conformity with this chapter [Act] as he may deem best; or such court may impose a fine and may also place the defendant upon probation in the manner as herein provided."

In the Carroll case, supra, we declared the act constitutional and held that, under the foregoing paragraph, suspension of sentence in addition to court action, must receive the approval of the district attorney before it becomes operative.

In the instant case it appears from an examination of the record that the court and district attorney had conferred on the subject of probation for Anderson; that both contemplated the possibility of granting it; but, although not differing greatly, they had not been able to agree on the exact terms and conditions of such probation. The court, under these circumstances, took the view that the district attorney had in effect given his approval of probation and was attempting to dictate the fixing of the terms and conditions thereof. This latter function the court believed it could exercise without the approval of the district attorney; hence the appointment of counsel by the court to represent it, and the subsequent proceedings that have brought the case before us. These now necessitate an interpretation of the quoted sentence of the statute.

■ The first approach to this question would seem to be one of studying section 1, supra, from the standpoint of syntax. Stripping the sentence of the elements that are nonessential for the purposes of this case, the sentence

would read: "The court shall have power, with the approval of the district attorney * * *, to suspend the imposition or execution of sentence for such period and upon such terms and conditions in conformity with this chapter as he may deem best." When thus simplified, it will be noted that the phrase "with the approval of the district attorney" might be construed as an adjectival phrase modifying "court", or as an adjectival phrase modifying "power", or as an adverbial phrase modifying the verbal phrase "shall have power to suspend." Probably the most approved practice would be to treat the phrase as an adjectival phrase modifying the noun "power"—this for the reason that it immediately follows the word "power" and is separated from it by a comma. Applying that construction, any grant of power to the court by section 1 must necessarily carry with it the approval of the district attorney. Counsel for the court comment on the fact that the word "he" in the phrase "upon such terms and conditions in conformity with this chapter as *he* may deem best" refers back to the court; but even assuming that to be the case, the only power granted the court under the sentence is power with the approval of the district attorney. It seems to us that the same reasoning applies even if it is argued that the phrase "with the approval of the district attorney" modifies "court", because in that case the only kind of court referred to in the sentence would be the court whose action must have the approval of the district attorney; and if the phrase is considered an adverbial phrase modifying the verb, the same reasoning would apply with equal or greater force.

Since writing this opinion we have observed the diagram marked "Exhibit A" which counsel for respondent have attached to their petition for rehearing. Counsel claim that this correctly diagrams the structure of the sentence under discussion. We believe that this very diagram confirms what we have already said, as it shows that the phrase "with the approval of the district attor-

ney" modifies the noun "power". In other words, the only power that the legislature has granted the court is not general or unlimited power, but power subject to "the approval of the district attorney, to suspend," etc.

The basic fact is that what we are asked to construe is all contained in one sentence. We believe that if the legislature had intended, as counsel for respondent urge, that the district court must needs have the approval of the district attorney in granting probation but would not need the district attorney's approval in fixing the terms and conditions, that the legislature would have said so in so many words, and that it would be a distorted construction to say at the beginning of the sentence that the district attorney's approval is necessary and at the end of the sentence that it was unnecessary. We believe, on the contrary, that the legislature intended that the approval of the district attorney was a sine qua non of the whole procedure outlined in section 1.

■ A study of the historical development of section 1 tends to confirm the construction which we place upon this section. An act passed by the legislature in 1909 is the only legislation that preceded the 1931 act on the subject of probation. Proceedings under the 1909 law were instituted by petition of the district attorney (the form of which is set out in the statute), suggesting that proceedings in regard to a certain named offender should be conducted in the probation division of the court. The offender was then served with the form of summons provided by the statute, based upon this petition, and subsequent hearings were conducted as a civil proceeding in chancery. The pertinent portion of the 1909 act, corresponding to section 1 of the 1931 act, reads: "The court may, in its discretion, exact such promises and impose such conditions of probation upon persons proceeded against under this act as shall seem best calculated to do justice * * *." S.L. '09, §5.

The 1931 act was originally introduced as Senate Bill No. 342 and in the House as House Bill No. 420.

Drafts of both bills apparently were identical and left the matter of probation and the terms and conditions thereof in the discretion of the court, making no reference to the district attorney. House Bill No. 420 was never acted upon. When Senate Bill No. 342 reached the House, section 1 was amended to read as subsequently enacted, except for the italicized words in the following clause: "the court shall have power with the approval *in writing* of the district attorney *to be filed in the cause.*" The italicized words were eliminated in the final draft. The Senate did not accept the House amendment. The matter then went to a joint conference, which finally approved the House's amending draft which contained the phrase "with the approval of the District Attorney." The title of the bill as originally drawn and as finally passed expressly repeals the 1909 act. The original draft of Senate Bill No. 342 also contains a repealing clause in the body of the act. The House amendment omitted a repealing clause in the body of the act. At the end of section 4, giving the juvenile and county courts in counties of over 200,000 population the same power as district courts under the act, is the clause: "provided, however, that nothing in this act shall be construed as modifying, repealing or amending the provisions of any other probation law now in effect." This conflict between the title and the body of the act as finally passed does not appear to have been raised or considered in the Carroll case, supra.

Because of the variance between the title of the 1931 act, which by its terms expressly repeals the 1909 act, and the body of the 1931 act, which by its terms expressly does not repeal prior legislation, we cannot say that the 1931 act expressly repeals the 1909 act. On the other hand, we cannot say that the 1931 act is invalid— we must give it effect. This is especially so because it *is later in point of time than the 1909 act.* The interpretation that counsel for respondent urge is substantially the procedure under the 1909 law, where the district

attorney calls the court's attention to an offender who, in his judgment, may be worthy of probation and then, having done so, has no further duties or rights in the premises; but on that theory there would have been no purpose in adopting any new legislation. We believe therefore that the legislature intended to enlarge the field of joint action between the district court and the district attorney.

In briefs and oral arguments both contestants assume that the present proceedings were not brought under the 1909 act.

Counsel for respondent have referred to the fact that section 1 of the original drafts of Senate Bill No. 342 and House Bill No. 420 contained the word "they" in the clause "the court shall have power * * * to suspend * * * the imposition and execution of sentence for such period and upon such terms and conditions as *they* may deem best," and that later drafts, including the draft as finally enacted, contained the word "he" in place of "they." The use of the pronoun "they" in the drafts where used is clearly erroneous, and the substitution of the pronoun "he" was necessary to make the sentence grammatically correct.

Counsel on both sides have alluded to the scarcity of cases in point on this subject. Counsel for respondent point out that most of the probation statutes of other states confer discretion on the court alone, and that no other state requires the court to act with approval of the district attorney. In some states, however, it appears that some separate administrative body is authorized to formulate the terms and conditions of probation.

In view of this absence of authorities, it may be appropriate to call attention to article II, section 2 (2), of the United States Constitution relating to the treaty making power of the President. This contains a phrase somewhat similar to the one that demands our interpretation in the instant case. It reads: "He [the President] shall have power, by and with the advice and consent

of the Senate, to make treaties, provided two-thirds of the senators present concur; * * *." Here we have substantially the same syntax, though in simplified form. Under this provision of the Constitution it has been held that where the Senate has not advised and consented to a so-called treaty it has no legal force. *In re Sutherland* (1892), 53 Fed. 551.

Indicating that the form of the sentence does not denote a distinction in dignity between the executive and the senate, is the interesting historical fact that it was not until the closing days of the Constitutional Convention that the President was associated with the Senate in the negotiation and ratification of treaties. On August 23, 1878, however, Madison observed "that the Senate represented the States alone, and for this as well as other obvious reasons it was proper that the President should be made an agent in the treaties." Willoughby on the Constitution of the United States (2d ed.), vol. 1, page 519. As well stated by the foregoing author (Ibid. page 525) "There would seem to be no question that, having the power either to approve or to disapprove an international agreement negotiated by the President, the Senate has also the power, when disapproving a proposed treaty, to state upon what conditions it will approve; in other words, to amend any treaty submitted to it." This right was upheld in *Haver v. Yaker*, 76 U.S. 32 (9 Wall. 32),.19 L. Ed. 571. Prof. C. C. Tansill (vol. 18 American Journal of International Law 459, July 1924) lists fifty-seven treaties amended by the Senate and afterwards ratified by the President.

To summarize, we believe that the power of the district court under section 1, chapter 136, 1931 Session Laws "to suspend the imposition or execution of sentence for such period and upon such terms and conditions in conformity with this chapter as he may deem best," is conditioned upon his having the approval of the district attorney; and we have reached this conclusion from a study of (1) the syntax of section 1; (2) the

historical development of the act itself; and (3) the actual happenings under a somewhat similarly worded clause in the United States Constitution.

We therefore repeat what we said through the late Chief Justice Bouck in the Carroll case, supra: "If the legislative requirement of approval by both officers named has not been complied with, the suspension was not lawfully made and the court must proceed to sentence. Though one of the two officers may be, as here, thoroughly conscientious in advocating the suspension, the latter cannot be effected without the consent of the other, who is presumed to be equally conscientious." Stated negatively, the district court and the district attorney each has a power of veto over the other, not only in suspending the imposition or execution of sentence, but in respect to the terms and conditions of such suspension. Stated affirmatively, there must be an accord or agreement between the occupants of the two offices in respect to the terms and conditions of probation before probation of an offender can become effective. In this respect neither office is of more dignity or power than the other—they are coordinate. The legislature did not undertake to rate them by the language used. It simply called for their earnest cooperation in the field of probation, with the worthy objective of a reformation of offenders.

Let a peremptory order in conformity herewith issue.

MR. CHIEF JUSTICE YOUNG and MR. JUSTICE HILLIARD specially concur.

On Petition for Rehearing.

MR. CHIEF JUSTICE YOUNG.

Further study of the record herein convinces me that it fails to show consent by the district attorney to a suspension either of imposition or execution of sentence.

Having decided, as I think the Court by its decision has, that the district attorney's consent was lacking, a situation is presented identical with that in the case of *People ex rel. Carroll v. District Court,* 106 Colo. 89, 101 P. (2d) 26. I believe our decision in that case is controlling. I therefore concur in the Court's opinion only so far as it reaffirms our holding in the Carroll case.

MR. JUSTICE HILLIARD specially concurring.

This is a proceeding in mandamus by a district attorney to require a district judge to impose statutory sentence against a defendant who had pleaded guilty to a charge of burglary with force. The question is, Did the district attorney consent to that which in contemplation of the applicable statute ('35 C.S.A., chapter 140, section 1), justified the judge's action? Attorneys for both parties stress the record, counsel for the judge insisting that the district attorney is shown to have given requisite consent, while the district attorney and his assistant contend contra.

Originally, I was convinced that the record justified the judge's interpretation thereof, and dissented from the opinion of the court granting the order. On further study, however, I have concluded that while the district attorney indulged in ambiguous language which may have lead the judge to believe that he had consented to what the judge thought was the proper disposition of the matter, I am not now persuaded that what the district attorney said, as shown by the record, was equivalent to unqualified consent, which I think is the requirement. My present conviction considered, *People ex rel. Carroll v. District Court,* 106 Colo. 89, 101 P. (2d) 26, is controlling, and I concur in the result.

I withhold general concurrence, however, because the court opinion goes far afield and undertakes to determine questions neither argued nor involved. The rambling is the more remarkable when we consider the

statements of the parties and that of the court in the opinion here, as now noted. The district attorney says he relies upon the Carroll decision, calling attention to the similarity of facts therein to those in the present case, and contending it is decisive of the controversy. He and his assistant in their brief quote therefrom as follows: "The *sole question* before us is whether the General Assembly has enacted a proper enabling statute under which the relator may claim the right to prevent the judge's suspension of imposition of sentence by withholding approval thereof, * * *." Counsel for the judge say: "It is our contention that the record in the instant case supports our statement that the District Attorney did consent." Replying, the district attorney says the judge "vitiated" the Carroll case. In the court opinion here, we say: "In both the Carroll case, supra, and the present one, the controversy arose from the district judge's attempt to suspend the imposition of sentence regardless of the fact that the district attorney refused to approve such suspension." Since the record fails to show the district attorney's consent, and that suffices— his disapproval is not necessary, I regret that the court, proceeding by an opinion reciting the foregoing, couched, of course, in the inimitable style of the author of the opinion, did not find it consistent to write within such limits, cite the Carroll case and close the judicial day. Instead, laboring momentously, the court has indulged a dissertation on syntax, wholly unsound, as I think, and quite beside any issue involved in the controversy, in a futile effort to justify a declaration that, "the district court and the district attorney each has a power of veto over the other, not only in suspending the imposition or execution of sentence, but in respect to the terms and conditions of such suspension." The court adds that "neither office is of more dignity or power than the other—they are coordinate." But for my respect for the learning of the distinguished author of the opinion, and as well for the other puristic brethren who concur there-

in, I should be tempted to subject the opinion to severe analysis. If there shall be those who may be interested in the rules of syntax, and wish to fortify themselves relative to the meaning of the statute involved in this inquiry, I refer them to the brief filed on rehearing by the judge's counsel. It conforms to my understanding of the simple rules of grammar, and as well to what must be the purpose of the statute. I pause to quote the statute, and remark briefly upon its several sentences. It reads: "When it shall appear to the satisfaction of the judge of any district court that the ends of justice and the best interests of the public, as well as the defendant, will be subserved thereby, the court shall have power, with the approval of the district attorney after conviction or after a plea of guilty or nolo contendere, for any crime or offense excepting murder of the first and second degree, to suspend the imposition or execution of sentence for such period and upon such terms and conditions in conformity with this chapter as he may deem best; or such court may impose a fine and may also place the defendant upon probation in the manner as herein provided. Such court may, subject to the provisions of this chapter, revoke or modify any condition or probation, or may change the period of probation. The period of probation, together with any extension thereof, shall not exceed five years; provided, however, that no person convicted as aforesaid shall be entitled to or shall receive the benefits of this chapter if he had theretofore been convicted of a felony in this state or of an offense in another state or country which, if committed in this state, would be punishable as a felony, and a certified copy of the record of such former conviction shall be deemed sufficient evidence thereof but other evidence of such former conviction may be admitted in the absence of such certified copy."

The statute consists of three sentences, the first of which authorizes the *judge, with the approval of the district attorney,* (a) "To suspend the imposition of sen-

tence," or (b) after sentence, proceeding with the consent of the district attorney, to suspend "execution of the sentence," all "upon such terms and conditions in conformity with this chapter as *he* may deem best; or such *court* may impose a fine and may also place the defendant upon probation in the manner as herein provided." The second sentence, only important if the judge and district attorney shall have acted pursuant to the alternatives of the first sentence, provides what further the "court" may do. The third sentence defines those offenders who under no circumstances "shall receive the benefits of this chapter," and is not applicable to this record.

I submit that the antecedent of the pronoun "he" employed in the first sentence, is the noun "judge," and does not refer to the district attorney in any sense whatever. Only of the judge is it enacted that *he* may suspend imposition of sentence, or, having sentenced, may suspend execution thereof. Without the consent of the district attorney, the judge, as is plainly stated, may not proceed as to either alternative; but once the district attorney's consent is given to "suspension of sentence," or of "execution" of sentence if imposed, that official is without further power. The statute does not clothe him with right to fix the terms of further orders, nor, measured by the respective functions of the two officials, does such right attend other than the judge.