## SAN LORENZO TITLE & IMPROVEMENT CO. v. CITY MORTGAGE CO.
### No. 2592.

Court of Civil Appeals of Texas. El Paso.
Feb. 27, 1932.

Rehearing Denied March 24, 1932.

Knollenberg & Cameron, McKenzie, Walthall & Gamble, Joseph U. Sweeney, J. E. Quaid, and Sydney Smith, all of El Paso, for appellant.

Richard F. Burges, Walter S. Howe, Jr., and Turney, Burges, Culwell & Pollard, all of El Paso, for appellee.

GOWAN JONES, Special Associate Justice.

This suit was brought by appellant, San Lorenzo Title & Improvement Company, a common-law trust, against appellee, City Mortgage Company, a corporation, in the district court of El Paso county, Tex. Allegations in appellant's petition in such court were laid, first, in the usual form of trespass to try title, and then appellant specially pleaded its title.

The principal allegations of appellant's petition are as follows: After first setting out the usual allegations in trespass to try title, appellant pleaded the source of its title, alleging that the property claimed is a part of what is commonly known as the San Lorenzo banco No. 302, now located and lying in the county of El Paso, state of Texas, describing it by metes and bounds; that prior to March 21, 1930, the said property was located within the territorial limits of the state of Chihuahua, republic of Mexico, but lay on the left (north) side of the Rio Grande river; and that on March 21, 1930, the International Boundary Commission, acting under the authority vested in it by the treaties of the United States of America and the United States of Mexico, classed said land as a banco, and eliminated the same from the provisions of said treaties; that said treaties provide that private ownership of land which belonged to Mexico, and lying on the left (north) side of the river, would, after such elimination, continue to belong to the owners under the Mexican title; that the International Boundary Commission had the right to determine and eliminate bancos formed by the action of the Rio Grande river; and that, when so eliminated, the sovereignty and jurisdiction of said land was, by virtue of said treaties and the action of the International Boundary Commission, passed to the United States of America, but that the private ownership of the land held by Mexican owners was, under and by virtue of the treaties between the two countries, recognized and respected.

Appellant further pleaded that said land involved in this suit and referred to as San Lorenzo banco No. 302 was Mexican territory and owned by Mexican owners prior to March 21, 1930, and on said date the International Boundary Commission, acting within its authority as provided by said treaties, eliminated said banco, and the jurisdiction and sovereignty of the same passed from the United States of Mexico to the United States of America, but that, by virtue of said treaties, the private ownership of said land was respected, and the Mexican owners continued to own said land.

Appellant further alleged that one Alfredo Urias, a resident and citizen of the city of Juarez, state of Chihuahua, republic of Mexico, acting under and by virtue of the laws of Mexico, on August 6, 1926, filed a petition in the court of first instance of the municipality of Juarez, state of Chihuahua, republic of Mexico, and therein advised that court that he knew of the existence of some parcels of vacant land in the town of San Lorenzo within the boundaries of said municipality and within the jurisdiction of said court which had been abandoned by the successors in interest of the original owners, which vacant land composed one of the bancos, viz., San Lorenzo banco No. 302, formed by an avulsive change in the channel of the Rio Grande river between the United States and Mexico, and, in accordance with the provisions of article 728 of the Civil Code of the state of Chihuahua, prayed that said land should be declared vacant and that a receiver be appointed and for a sale of the same; that, after due and legal procedure as provided by the laws of the state of Chihuahua, republic of Mexico, a judgment was rendered by said court of first instance on February 1, 1927, declaring said property to be vacant land, and directing that notices of sale be issued; that said San Lorenzo banco No. 302 is a well-known tract of land, with well-defined boundaries, and may be located on the ground; that said order became and was final and a valid and binding judgment rendered by a court of competent jurisdiction having jurisdiction of all the subject-matter

involved in said suit and having jurisdiction of all the parties plaintiff and defendant, and that said judgment became and was a final judgment in rem; that said court of first instance, under and by virtue of the provisions of the laws of the State of Chihuahua, republic of Mexico, entered an order on June 29, 1927, directing that said land be sold, and on July 19, 1927, the said land was sold to the said Alfredo Urias, and on August 2, 1927, the said Alfredo Urias filed in said court his motion to have said sale approved, and on August 31, 1927, said sale was approved by the court, and said land thus became and was the property of the said Alfredo Urias in fee simple; that on August 5, 1927, the said court of first instance executed and delivered to the said Alfredo Urias a deed to said property so sold to him as aforesaid; that said deed was made, executed, and delivered in compliance with the laws of the state of Chihuahua, republic of Mexico; that the court making all of said orders, judgments, and provisions had jurisdiction of the subject-matter and the persons, and is a court of competent jurisdiction, and fully authorized to make all of said orders, judgments, and provisions as provided by the laws of the state of Chihuahua, republic of Mexico.

It was further alleged that on March 21, 1930, the International Boundary Commission of the United States of America and the United States of Mexico, acting under and by virtue of the authority vested in said governments by the various treaties existing between said governments, made and promulgated its Minute No. 123, and which said minute recited that said San Lorenzo banco was cut from Mexico by the Rio Grande river in 1898, and is on the left and north side of said river, and the same is "eliminated from the effects of Article 2 of the Treaty of November 12, 1884, and the dominion and jurisdiction of this banco shall pass to the United States of America in accordance with the provisions of the treaty of March 20, 1905, for the elimination of bancos." Minute No. 123 of the International Boundary Commission of the United States and Mexico, dated at El Paso, Tex., March 21, 1930, and appearing in the proceedings of the International Boundary Commission of the United States and Mexico at page 41.

Appellant further alleged that, prior to the decision of the International Boundary Commission on March 21, 1930, and also the entering of said Minute No. 123, all of said San Lorenzo banco was Mexican territory, that on the 25th of October, 1930, after due and proper notice as provided by the laws of the state of Chihuahua, a correction was made by the judge of a proper court in the republic of Mexico as to the astronomic point of location in the description of said banco, and that appellant is the owner of said land in fee simple, and is entitled to the possession thereof.

Appellee pleaded, in due order of pleading and among other things, a general demurrer. This general demurrer upon a hearing was by the trial court sustained.

Accordingly, the only question now before this court is: Do the pleadings of appellant state a prima facie cause of action?

To test out the correctness of the trial court's ruling on appellee's general demurrer, it is necessary that we come to a close inspection and understanding of certain pertinent treaties and conventions between the United States and Mexico and which fix the boundary line and eliminate bancos between said two republics, all of the same being referred to in appellant's pleadings.

The first of these treaties that it is necessary to observe is the treaty of 1848, also called the Treaty of Guadalupe Hidalgo. This treaty provided in article 5 that "the boundary line between the two republics shall commence in the Gulf of Mexico, three leagues from land, opposite the mouth of the Rio Grande * * * from thence up the middle of that river, following the deepest channel, where it has more than one, to the point where it strikes the southern boundary of New Mexico." 9 U. S. Stat. 922, 926. Under this treaty, therefore, a part of the boundary line between the United States and Mexico was fixed at "the middle of that river," viz. the Rio Grande river.

It was soon thereafter discovered that such boundary line as so fixed was a shifting one, and subject to change by both erosion and accretion and also by avulsion. Accordingly, the Convention of 1884 was with time entered into between the United States and Mexico wherein it was again proclaimed that the dividing line shall forever be that described in the Treaty of 1848, namely, the middle of the Rio Grande river, but by article 1 of said Convention the doctrine of erosion and accretion was recognized; and as to avulsion, which was also recognized, it was provided in article 2 of said Convention that "any other change, wrought by the force of the current * * * shall produce no change in the dividing line," and the boundary line "shall continue to follow the middle of the original channel bed, even though this should become wholly dry or be obstructed by deposits." 24 U. S. Stat. 1011, 1012. In other words, avulsive changes in the river were to produce no change in the boundary line.

Again, time made its disclosures, and it was soon brought to light that if, following an avulsive change in the river, the boundary line at such place was to be an abandoned river bed, there would there be found resulting and existing what is called along the river a "banco." A banco is a small tract of land on the opposite side of the river from

the country to which it belongs and so existing by virtue of an avulsive change in the river. These bancos continued to form under such Convention of 1884, and with time there was a considerable number of them; and so the banco known as San Lorenzo banco No. 302, and being the subject-matter of this litigation, was formed in 1898.

For the two countries to have these small tracts of land lying on the opposite side of the altered channel of the river from the parent country was an anomaly and a source of inconvenience and misunderstanding. Accordingly, the Convention of 1905 was entered into between the two countries for the purpose of eliminating these bancos. Under the terms of this Convention, all the bancos which previous to such time had been surveyed and described (and being 58 in number) were disposed of by decreeing that "the dominion and jurisdiction of so many of the aforesaid fifty-eight (58) bancos as may remain on the right [south] bank of the river shall pass to Mexico, and the dominion and jurisdiction of those of the said fifty-eight (58) bancos which may remain on the left [north] bank shall pass to the United States of America." Article 1 of the Convention of 1905. Article 2 of such Convention provides: "The International [Boundary] Commission shall, in the future, be guided by the principle of elimination of the bancos established in the foregoing article [article 1], with regard to the labors concerning the boundary line throughout that part of the Rio Grande and the Colorado River which serves as a boundary between the two nations. * * *" 35 U. S. Stat. 1863, 1865, 1866. Therefore, under the terms of this Convention of 1905, all bancos then formed but unsurveyed, as well as such bancos as might thereafter be formed in the future, were to follow the rule established in the elimination of the 58 surveyed bancos; i. e., all bancos on the north side of the river should pass to the United States of America and all bancos on the south side of the river should pass to the United States of Mexico.

By the Boundary Convention of 1882 between the United States and Mexico an International Boundary Commission had been set up. It might be noted that by subsequent conventions this International Boundary Commission has been continued down to date. Such International Boundary Commission, being the proper agency at hand, was given certain duties to perform by article 3 of this Convention of 1905, such article providing: "With regard to the bancos which may be formed in future, as well as to those already formed but which are not yet surveyed, the Boundary Commission shall proceed to the places where they have been formed, for the purpose of duly applying Articles I and II of the present convention * * * as regards these bancos, as well as those already formed but not surveyed, and those that may be

formed in future, the Commission shall mark on the ground, with suitable monuments, the bed abandoned by the river, so that the boundaries of the bancos shall be clearly defined. In other words, the International Boundary Commission, by such Convention, was given the duty of surveying all bancos then formed but unsurveyed, and, as regards bancos that might thereafter be formed in the future, it was given the duty, at the appropriate time, of marking out such future bancos on the ground with suitable monuments, and the further duty was placed on such Commission of then indicating the bed of the abandoned river,."so that the boundaries of the bancos shall be clearly defined."

With the boundary line so fixed and with the treaties and conventions between the United States and Mexico so existing, the San Lorenzo banco No. 302, the subject-matter of this litigation, was, according to the record in this case, formed in the year 1898.

This San Lorenzo banco had been existing as a banco for some 28 years, when, on August 6, 1926, one Alfredo Urias, as before noted, a resident and citizen of the Republic of Mexico, and acting under the laws of that republic, filed a petition in the court of first instance of the municipality of Juarez, republic of Mexico, concerning this banco, and praying that the same be declared vacant lands and sold. Such action resulted, on February 1, 1927, in a judgment, and said judgment culminated in a deed executed and delivered by the said court of first instance of the municipality of Juarez, to the said Alfredo Urias. on August 5, 1927. Appellants claim title under such deed.

With such pleadings and facts before us, we now have to inquire: Do the pleadings of appellant state a prima facie cause of action? In other words, was the trial court correct in sustaining the general demurrer?

Since the San Lorenzo banco No. 302, the subject-matter of this litigation was formed; according to the pleadings in this case, in 1898, it was formed at a time, when, under the treaties and conventions then existing between the two high contracting parties, an avulsive change in the river did not work a change in the boundary line. Accordingly, from the time of its formation in 1898 until a subsequent treaty or convention be made between the two nations altering the existing status, this banco of necessity remained the sovereign property of Mexico; dominion and jurisdiction thereof being lodged in such republic. Such altered condition and change of existing status came about with the Convention of 1905, signed on March 20, 1905, with ratifications exchanged May 31, 1907, and which was proclaimed June 5, 1907.

It is to be remembered that this Convention of 1905 had for its chief object the elimination of bancos then existing or thereafter to be

formed by the Rio Grande river, and that, under the terms of this convention, all bancos, whether then formed and surveyed, or then formed and unsurveyed, or thereafter to be formed in the future, were awarded to the two respective nations by decreeing that all bancos on the north side of the Rio Grande river should pass to the United States of America and all bancos on the south side of the Rio Grande river should pass to the United States of Mexico. Therefore, since San Lorenzo banco No. 302 was formed some seven years prior to the signing of the Convention of 1905, but unsurveyed at the time of the entering into of such convention, we have to inquire what was the effect of the Convention of 1905 upon such banco, and when did the Convention of 1905, in all of its aspects, go into effect as to such banco as between the two nations at interest.

■ Treaties and conventions are contracts between nations, and, like contracts between individuals, become binding as to the contracting nations from the day they are signed. It was said in Davis v. Police Jury, 9 How. 280, 289, 13 L. Ed. 138: "All treaties, as well those for cessions of territory as for other purposes, are binding upon the contracting parties, unless when otherwise provided in them, from the day they are signed. The ratification of them relates back to the time of signing. Vattel, B. 4, c. 2, sec. 22; Mart. Summary, B. 8, c. 7, sec. 5."

A different rule, it might be said parenthetically, prevails as to the time when treaties become effective as regards private rights. But it is to be noted appellant's private rights were not at this time asserted in San Lorenzo banco No. 302. Such assertion came years later and subsequent to the ratification of the Convention of 1905. Accordingly, therefore, appellant's private rights were not at this time involved.

■ Since, therefore, San Lorenzo banco No. 302 was formed prior to and was in existence on the 20th day of March, 1905, the Convention of 1905 went into effect as regards such banco on that date so far as appellant is concerned.

True, the International Boundary Commission under article 3 of the Convention of 1905 was charged with the duty after such last-named date of repairing to this tract of land, designating it as a banco, and surveying it and marking and clearly defining its boundaries and indicating with suitable monuments the abandoned bed of the river. But in so acting the International Boundary Commission was but a fact-finding body. While its duties in this particular were to be discharged subsequent to the signing of the Convention, in so acting it was but seeking out facts to be applied to an already existing boundary line; for the treaties existing between the two republics had theretofore fixed such boundary.

In short, the Commission was merely to go upon the ground and mark out the boundaries in accordance with the then existing boundary treaties. Such previous treaties and conventions between the two republics had already fixed the boundary line between the two nations at the center of the deepest channel of the river, except as to bancos. Nor does the fact that the International Boundary Commission did not promulgate its Minute No. 123 declaring said land to be a banco on the north side of the river until March 21, 1930, preclude the Convention of 1905 from becoming immediately operative as to such banco between the two high contracting parties at the time of its signing. The point made may perhaps be cleared up in a homely illustration: John Doe enters into a written contract with Richard Roe to sell him all the black sheep on his farm; Tom Mix, subsequent to the signing of such contract, to some days later go upon such farm and pick out the black sheep. Under such an illustration no one will say that the title to all black sheep on John Doe's farm did not at once pass to Richard Roe upon the signing of such contract. Tom Mix merely acts in a fact-finding capacity in subsequently designating the black sheep. Just so with the duties of the International Boundary Commission in the instant case.

Accordingly, we must hold that, so far as appellant is concerned, the Convention of 1905, as between the two high contracting parties, became operative and effective as to San Lorenzo banco No. 302 on the date of the signing of such convention; namely, March 20, 1905. On such date, as between the two nations, sovereignty, dominion, and jurisdiction of said banco passed out of the republic of Mexico and into the republic of the United States. United States v. Reynes, 9 How. 127, 13 L. Ed. 74; United States v. D'Auterive, 10 How. 619, 13 L. Ed. 560; Haver v. Yaker, 9 Wall. 32, 19 L. Ed. 571; United States v. Grand Rapids Co. (C. C. A.) 165 F. 297; Kenedy Pasture Co. v. Texas, 111 Tex. 200, 231 S. W. 683.

■ Whatever possession, if any, Mexico had of such banco after the Convention of 1905, was of necessity but a de facto possession; and a de facto possession in itself cannot confer the power of disposing of title.

■ ■ With such the case, it is obvious, then, that the judgment of the court of first instance of the municipality of Juarez entered on the 1st day of February, 1927, and culminating in a deed to Alfredo Urias on the 5th of August, 1927 (some twenty-two years after the Convention of 1905 had become effective as to said banco), was of no force and effect, and a total nullity, for the simple reason that such court did not have jurisdiction of the subject-matter. Mexican courts do not have jurisdiction over territory of the

United States. And since appellant claims title through and by virtue of such judgment and such deed, then appellant's title must fail with the failing of such judgment and such deed. Patently enough, therefore, appellant's pleadings evince in appellant no title to the property, and a general demurrer should have been sustained by the trial court for such reason.

■ With the court so holding, it becomes unnecessary to examine into the sufficiency of the steps taken by Alfredo Urias in the court of first instance of the municipality of Juarez. Whatever was done in or by such court was done without having jurisdiction of the subject-matter, and was therefore a nullity, and of no force and effect.

Accordingly, the action of the trial court in sustaining the general demurrer is approved, and the case is in all things affirmed.

PELPHREY, C. J., and J. M. CALDWELL, Special Associate Justice, concur.

J. M. CALDWELL and GOWAN JONES were Special Associate Justices appointed by Governor Sterling to act in the places of Associate Justices HIGGINS and WALTHALL, who were disqualified.