SAN LORENZO TITLE & IMPROVEMENT COMPANY V. CITY MORTAGE COMPANY.

No. 6263. Decided June 30, 1934.
Motion for Rehearing Overruled October 24, 1934.
(73 S. W., 2d Series, 513.)

26

McKenzie, Walthall & Gamble, J. U. Sweeney, J. E. Quaid, F. C. Knollenberg, E. F. Cameron, Sydney Smith and J. F. McKenzie, all of El Paso, for plaintiff in error.

It was error to hold that the treaty became effective on

March 20, 1905, as to bancos that had not been determined by the manner designated in the treaty (the International Boundary Commission) as well as bancos that had been formed. Reese v. Cobb, 135 S. W., 220; Chambers v. Hill, 26 Texas, 472; Weaver v. Robison, 114 Texas, 272, 268 S. W., 133.

*Richard F. Burges, Walter S. Howe, Turney, Burges, Culwell & Pollard*, all of El Paso, for defendant in error.

The treaty was effective, if ever, between the United States and Mexico on March 20, 1905. As neither the Republic of Mexico, nor any political subdivision thereof, could change the statue of the title after the signing of the treaty, the plaintiff in error acquired no title to the premises in controversy. The first step taken by plaintiff in error to acquire title to the land was on August 6, 1926, claiming that at the time of the signing of the treaty the title to the land was in the State of Chihuahua. Donald v. Dodd, 12 Texas, 381; State v. Bustamente, 47 Texas, 320; United States v. Reynes, 9 How., 127; Cunningham v. Robison, 104 Texas, 227, 136 S. W., 441; Cline v. Niblo, 117 Texas, 474, 8 S. W. (2d) 633.

Mr. Justice PIERSON delivered the opinion of the court.

This is a suit in trespass to try title involving a large number of lots in El Paso County, Texas, a part of the San Lorenzo Blanco No. 302. The District Court sustained a general demurrer to the Title & Improvement Company's petition, and the Court of Civil Appeals affirmed that judgment. (48 S. W. (2d) 310.) The case is before the Supreme Court on writ of error.

The first part of the Title & Improvement Company's petition sets out the usual allegations, averring ownership of the lots in itself and its predecessors in title since 1898, and the date of defendant in error's entry as October 2, 1930. It then sets out the following detailed allegations:

That prior to March 21, 1930, said banco was located in Mexico, (but on the north side or American side of the Rio Grande River), and on that date the International Boundary Commission, acting under various treaties between the United States and Mexico, determined that said land was a "banco", and eliminated it as such under those treaties; that since the Treaty of 1848, when the Rio Grande River became the boundary between the United States of America and the United States of Mexico along the western border of Texas, the Rio Grande River had undergone various changes in its bed, causing confusion in the jurisdiction over lands along the river, and necessitating the creation of the said Boundary Commission, with power to survey and eliminate bancos, including the San

Lorenzo Banco No. 302; that under said treaties the Boundary Commission had the right to determine and eliminate bancos formed by the action of the Rio Grande River, and that, when so eliminated, the sovereignty and jurisdiction of said land passed to the United States of America, but that the private ownership of said land owned by Mexicans was recognized and respected; that said San Lorenzo Banco No. 302 was Mexican territory and owned by Mexican citizens prior to March 21, 1930; that the sovereignty thereof only passed to the United States of America on said date, and the Mexican owners continued to own said land. It also pleaded the several treaties between the United States of America and the United States of Mexico including the Treaty of 1905 which provided for the elimination of bancos, leaving with the Boundary Commission the detail of determining a banco. With respect to the several parcels of land here in controversy it pleaded that said land was assessed and carried on the tax books of the City of Juarez, Mexico, since 1898; that on August 6, 1926, one Urias, a Mexican citizen, filed a vacant land proceeding in the proper Mexican court of that city, claiming that said land was vacant, having been abandoned by the successors in interest of the original owners; that on February 1, 1927, said court duly entered its judgment declaring said land to be vacant, and ordered its sale. The petition, judgment, and order of sale were fully pleaded. Plaintiff in error further pleaded that the said land was sold to Urias, and the sale was duly approved by said Mexican court, and that said land was regularly deeded to Urias by the said court. It set out the Constitution and laws of Mexico under which said vacant land proceedings were had; also the order of the Boundary Commission of March 21, 1930, declaring said land to be a banco and eliminating it from the effects of Article II of the Treaty of 1884, and providing that the "dominion and jurisdiction of this banco shall pass to the United States of America in accordance with the provisions of the Treaty of 1905 for the elimination of bancos." It alleged that prior to the decision of said Boundary Commission on March 21, 1930, said land was Mexican Territory, and that under the Constitution and laws of Mexico already pleaded, only Mexican citizens could legally own said land, and that the defendant in error, being an American citizen, has no valid title thereto; that plaintiff in error is now owner of said land in fee simple, and entitled to possession; that said banco, under the facts so pleaded, is ceded territory from Mexico to the United States, and that said judgments, orders, and decrees of said Mexican court relating to the title to said banco are

domestic judgments, entitled to full faith and credit here; that the decision of this case depends upon the interpretation of a treaty made between the United States and Mexico, and thus raises a Federal question; that the political arms of the two governments have agreed that the jurisdiction of bancos should not pass from the government from which they were cut until a date not earlier than the date of the finding by the said Boundary Commission that a banco existed,—and that said governments have acted and agreed upon such policy, and such acts amount to a decision which is decisive upon the courts.

In its argument in its brief in the Court of Civil Appeals, plaintiff in error says:

"Plaintiff's case rests on two foundations, a treaty and a judgment. Stated a little more fully we rely on two propositions: that, the resolution of the International Boundary Commission dated March 21st, 1930, was within the power conferred upon it by treaty, was valid and binding, and had the effect of determining that the land in question had always belonged to Mexico, and of transferring sovereignty thereover to the United States; and that the proceedings in the Court of First Instance, City of Juarez, State of Chihuahua, Mexico, terminated in a valid and binding judgment which had the effect of vesting title to the land in question in Alfredo Urias, plaintiff's predecessor in title. * * * The only question to be determined then is whether they constitute a cause of action."

Defendant in error answered by general demurrer, several special exceptions, pleas of limitation, and also pleaded a title under a Texas patent dating back to April 24, 1860.

Summing up, plaintiff in error alleges that the land in controversy was a part of Mexico at all times prior to 1930, as judicially and finally determined by the International Boundary Commission; that prior to 1930, and while the land was in Mexico, a proper Mexican court, under appropriate Mexican proceedings, invested its (plaintiff in error's) predecessor in title with the private, fee simple estate in said land; and that under the treaties between the United States and Mexico our courts must respect and give full force and effect to said Mexican judgment, in so far as the private ownership of said land is concerned,—which by said treaties remains undisturbed.

■ According to the allegations in the petition, this banco was formed in 1898, and has ever since that date been on the north side of the Rio Grande River; but that such banco was not officially declared to be such until 1930. These facts are admitted by the demurrer. But the legal effect of the Boundary

Commission's finding of 1930, which is decisive of this suit, is not admitted.

If jurisdiction and sovereignty over the land in question passed to the United States of America upon the effective date of the Treaty of 1905, then it follows that the Mexican title pleaded by plaintiff in error must fall; for the court from which it derived its claim would then have been without jurisdiction to make any adjudication with reference to such title.

The pertinent part of the Boundary Commission's finding of 1930 is as follows:

* * * "the dominion and jurisdiction of this banco shall pass to the United States of America in accordance with the provisions of the Treaty of 1905 for the elimination of bancos."

A literal reading of this finding indicates that it transferred the sovereignty as of its effective date in 1930. But its real meaning and effect must be gained from the treaties from which the Commission derived its authority, and particularly from the provisions of the 1905 Treaty.

This case is a companion case to San Lorenzo Title & Improvement Co. v. Clardy et al., (Court of Civil Appeals opinion reported in 48 S. W. (2d) 315), and to San Lorenzo Title & Improvement Co. v. Caples et al., (Court of Civil Appeals opinion reported in 48 S. W. (2d) 329). The pleadings are the same in all three cases. In this and the Clardy case (post, p. 31) a general demurrer was sustained to plaintiff's petition. The Caples Case (post, p. 33) was tried on facts, and judgment was rendered for defendants. These judgments were affirmed by the Court of Civil Appeals in three elaborate, carefully written, and able opinions by Special Associate Justice Gowan Jones, Chief Justice Pelphrey, and Special Associate Justice J. M. Caldwell. In these opinions plaintiff's petition were set out and analyzed, and the treaties between the United States of America and the United States of Mexico relating to the boundary between the United States of America and the United States of Mexico from 1848 to 1905 were extensively quoted, analyzed, and applied, together with the minute or entry of the Boundary Commission in 1930 mentioned above. Since these opinions correctly interpreted and applied the law of these treaties, and since they are so full, clear, and convincing, it is unnecessary for us to write at length.

Another case, that of Willis v. First Real Estate & Investment Co. et al., involving a part of the same banco and upon similar pleadings, and involving the construction and application of the same treaty provisions and the same minute of the

Boundary Commission, was tried in the United States District Court for the Western District of Texas, in which a judgment for defendants was entered. On appeal to the United States Circuit Court of Appeals, Fifth Circuit, the same construction was given to the treaties between the United States of America and the United States of Mexico, and the same effect was given to the findings of the Boundary Commission as was given them in the three opinions of the Court of Civil Appeals at El Paso; and defendants' judgment for title was affirmed. (68 Fed. (2d) 671.)

■ We support the holdings that treaties between governments are binding from their effective dates; and viewing these three cases together, the pleadings in the first two and the pleadings and facts in the third, we are of the opinion that San Lorenzo Banco No. 302 was not at any time since 1905 under even the *de facto* possession of Mexico, and certainly not under the *de jure* jurisdiction and sovereignty of Mexico, and that the Mexican Government could not grant title or private rights thereto, and that a Mexican court had no jurisdiction to adjudicate titles thereon.

We support the holding that under the pleadings in the three cases before us the judgment of the Mexican court under which plaintiff claimed title was void; and also the holding on the facts as well as on the pleadings in the case of San Lorenzo Title & Improvement Co. v. Caples et al. that the judgment of the Mexican court was void and passed no title to the land.

The cases cited in the opinions of the Court of Civil Appeals are here referred to. They are approved and followed. (Kennedy Pasture Co. v. Texas, 111 Texas, 200, 231 S. W., 683; Haver v. Yaker, 9 Wall., 32, 19 L. Ed., 571; Coffee v. Groover, 123 U. S., 1, 31 L. Ed., 51, 8 Sup. Ct., 1.)

The judgments of the District Court and Court of Civil Appeals are in all thing affirmed.