**CANALES et al. v. CLOPTON.**

No. 10764.

Court of Civil Appeals of Texas.
San Antonio.

Nov. 13, 1940.

Rehearing Granted Dec. 11, 1940.

. J. T. Canales, of Brownsville, H. P. Guerra, of Rio Grande City, and Kennedy Smith, of Raymondville, for appellants.

R. M. Bounds, of McAllen, and John A. Pope, of Rio Grande City, for appellee.

NORVELL, Justice.·

This is an action of trespass to try title brought by appellee, John H. Clopton, for the recovery of title and possession of certain lands situated in Starr County, Texas.

. Certain defendants in this action, namely, Dr. Jose G. Garcia, Rita Garcia, San Juana Garcia and J. T. Canales, the latter acting in the capacity of a trustee, reconvened and prayed for judgment against Clopton for title and possession of "El Refugio" Banco No. 92 and "El Barrito" Banco No. 93, containing 221.7 and 272 acres of land, respectively. Clopton dismissed his action and the case was tried upon the plea of reconvention. Trial was to the court without a jury and judgment rendered against the cross-plaintiffs who have appealed.

The lands in controversy lie near the Rio Grande, which is the international boundary line between the United States of America and the Republic of Mexico. The lands now comprising the bancos were situated in Mexico prior to 1917, when by a sudden change in the channel of the river Banco No. 93 was cut to the American side of the river. A similar change in the river occurred in 1919, which resulted in the cutting of Banco No. 92 to the American side.

The treaties and conventions between the United States and the Republic of Mexico, applicable to this case, are fully set out and analyzed in the San Lorenzo cases by the El Paso Court of Civil Appeals. The holdings in these cases were expressly approved by the Supreme Court, and a discussion of the same is unnecessary in this opinion. See San Lorenzo Title & Improvement Company v. City Mortgage Company, Tex. Civ.App., 48 S.W.2d 310; Id., 124 Tex. 25, 73 S.W.2d 513; San Lorenzo Title & Improvement Company v. Clardy, Tex.Civ. App., 48 S.W.2d 315; Id., 124 Tex. 31, 73 S.W.2d 516; San Lorenzo Title & Improvement Company v. Caples, Tex.Civ. App., 48 S.W.2d 329; Id., 124 Tex. 33, 73 S.W.2d 516.

It is sufficient to say that neither of the bancos involved had an area of 250 hectares (approximately 600 acres), nor a population of 200, and therefore the changes in the river occurring in 1917 and 1919 transferred the political sovereignty of the lands involved to the United States but did not change the private ownership of.the bancos.

Clopton is the owner of Porciones 86 and 87, ancient jurisdiction of Camargo, now situated in Starr County, and proved a paper title thereto emanating from the sovereignty of the soil. Appellants claim ownership of the Camargo porciones situated in Mexico across the Rio Grande opposite appellee's land.

J. H. May, the county surveyor of Starr County, testified that by using field notes of R. C. Trimble, prepared in the years 1853 to 1857, covering Porciones 86 and 87, as well as other porciones in the vicinity, he was able to approximately locate the southeast corner of Porcion 87 (the east porcion), which was on the bank of the Rio Grande. The south boundary line of the two porciones, which was the river, could therefore be located as it existed in 1853 or thereabouts, and it appears that at that time the channel of the Rio Grande ran a considerable distance south of the position now occupied by the two bancos ·in controversy.

The area now occupied by the bancos (with the exception hereinafter mentioned) originally lay within the Trimble field notes of Porciones 86 and 87, which were presumedly included in the patents issued by Governor Sam Houston in 1860, under the provisions of the Relinquishment Act of 1852.

It is appellants' theory that by a process of erosion on the American side and accretion on the Mexican side, the land now in the bancos became part of the Mexican porciones claimed by them and their predecessors in title. Manry v. Robison, 122 Tex. 213, 56 S.W.2d 438.

The burden of proving their title rested upon appellants, under the well recognized rule that one must recover, if at all, on the strength of his own title and not upon the weakness of that of his adversary.

In order to meet this burden, appellants relied upon proof of possession to establish title.

The trial court upon proper request, among others, made the following findings:

"I find that while said lands were on the South or Mexican side of the Rio Grande River, Juan Garcia Pena and his descendants (under whom appellants claim) occupied the same intermittently by tenants, but that they never had said lands under fence and that said occupation was not hostile or under any claim of title; that said occupation continued up to the time that the lands known as Bancos 92 and 93 were transferred back to the North or American side of the Rio Grande River; that said occupation by Juan Garcia Pena and his descendants through tenants consisted of intermittent use of said lands without them moving thereon. * * *

"I find that what is known as Banco 93 was transferred back to the American side of the Rio Grande River by avulsion in the year 1917, and that what is known as Banco 92 was transferred back to the American side of said River by avulsion in the year 1919.

"I find that immediately after Bancos 92 and 93 were transferred back to the American side of the Rio Grande River Luis Garcia (a grandson of Juan Garcia Pena) sent or directed some farmers to farm a portion of said Bancos 92 and 93, but that neither the said Luis Garcia or any of said farmers during that time actually lived on said Bancos 92 and 93, and each farmer only farmed a small portion of said Bancos, and that the balance of said Bancos was not used by any of them; and that during some years on account of severe droughts or for other reasons some of said farmers did not raise any crop on said lands and that when a crop was raised by said farmers they remitted a portion of the proceeds of same to the credit of Luis Garcia, and that the occupation and possession of said farmers and Luis Garcia was not exclusive; that neither Luis Garcia nor any of these said farmers ever fenced any part of said Bancos, and at all times, from the time the said Bancos were transferred back to the American side of the Rio Grande River as found * * * above, until the present time, the lands involved in this suit were under the fence of John H. Clopton and his predecessors in title and they exercised a sort of joint possession with Luis Garcia and said farmers concerning said property."

From these findings the trial court concluded that the possession shown by appellants and those under whom they claim was insufficient to raise a presumption of title.

Unless appellants' evidence in regard to possession is such that a presumption of title must follow as a matter of law, this Court can not disturb the findings and conclusions of the trial court.

As above pointed out, it seems clear that the area occupied by the lands in controversy originally lay within the field notes of Porciones 86 and 87. It is not shown when these lands were transferred to the Mexican side, except that such change occurred sometime between 1853 and 1917. Testimony as to the possession of the Mexican porciones across the river from Porciones 86 and 87 is meager, and consists for the most part of witnesses' statements as to claims of ownership, which if admissible at all, are clearly without much probative force. It does appear that small tracts upon the bancos were farmed by various parties as tenants of Juan Garcia Pena and his descendants. The testimony of one of appellee's witnesses indicates that shortly after the bancos were cut to the American side, in 1917 and 1919, they were placed under the fence of Mrs. A. M. Kelsey Bass (appellee's predecessor in title), who then owned the south part of Porciones 86 and 87, and that the use of the lands in the bancos by tenants of the descendants of Juan Garcia Pena was permissive and not exclusive.

The doctrine that title or ownership may be inferred from possession is a rule of evidence and not of property. Humble Oil & Refining Company v. Wilcoxon, Tex.Civ.App., 70 S.W.2d 218. The nature of the possession necessary to raise a presumption of title, as well as the province of the court and jury (the trial judge here) in a case involving proof of title by possession, is discussed in Lynn v. Burnett, 34 Tex.Civ.App. 335, 79 S.W. 64, 66, wherein Judge Stephens, speaking for the Fort Worth Court of Civil Appeals said:

"It has several times been held in this state that proof of prior possession of land is prima facie evidence of title, and sufficient to warrant a recovery in trespass to try title against one entering without ti-

tle. * * * Such possession must, of course, be actual, and must be so clearly defined as to give the claimant the exclusive dominion over the property. Page v. O'Brien, 36 Cal. 559. And before the judge is authorized to take the case from the jury the evidence must be conclusive, leaving no room for doubt as to the fact of actual possession. It is not enough that the evidence is without conflict in establishing the facts relied on to show actual possession, but these facts must themselves conclusively prove such possession. It is often the case that there is no dispute as to the circumstances offered in evidence to establish a given fact—such, for instance, as residence or actual settlement—and yet the proper inference to be drawn from these facts involves a difference of opinion, and should be left in the first instance to the jury. The fact of actual possession belongs to this class." See, also, Lund v. Doyno, Tex.Civ.App., 57 S.W.2d 868; Id., Tex.Com.App., 91 S.W.2d 315.

We can not say on the record here that appellants' evidence of possession was such as required the trial judge to hold that a presumption of title arose as a matter of law. This holding calls for an affirmance of the trial court's judgment, and it is unnecessary to discuss other theories advanced by appellee in support of the judgment.

Appellants' fifth proposition raises a point regarding the taxing of part of the costs in the court below. We hold that the trial court did not abuse his discretion in allowing appellee to file a disclaimer to that part of Banco No. 92 lying west of the west boundary line of Porcion 86, after the taking of testimony had been completed, nor in taxing costs pertaining to the cross-action against appellants. 33 Tex.Jur. 505, § 78. Appellants' proposition is accordingly overruled.

For the reasons above stated, the judgment of the trial court is affirmed.

## On Motion for Rehearing.

Appellants have filed a thorough and vigorous motion for rehearing asserting that their proof of possession was sufficient to raise an inference of title as a matter of law. We have again examined the statement of facts in the light of appellants' motion and are of the opinion that our original holding on this point was correct. This court is unauthorized to set aside an express finding of a trial court in a non-jury case, unless there is no evidence to support the finding or such finding is manifestly contrary to the overwhelming preponderance of the evidence. Shaw v. Centerfield Oil Co., Tex.Civ.App., 10 S.W. 2d 144. This is true even though the appellate court in weighing the evidence might have reached a conclusion different from that of the trial court. Crawford v. Beaver-Electra Refining Co., Tex.Civ.App., 273 S.W. 892.

Appellants contend that the trial court erred in finding "that all matters not herein specifically enumerated are found in favor of cross-defendant (appellee) John H. Clopton." This general finding was not considered by us in our disposition of this case, and any error existing by reason of its presence among the trial court's findings is therefore harmless.

As pointed out in our original opinion, appellee, Clopton, filed a disclaimer as to part of the lands sued for in appellants' cross-action. Upon this disclaimer, the trial court dismissed appellants' cross-action, insofar as it pertained to the lands described in the disclaimer. This was error and the judgment of the trial court will be reformed so as to allow appellants judgment for the lands and premises described in appellee's disclaimer. Williams v. Humble Oil & Refining Co., Tex.Civ.App., 139 S.W.2d 346, and authorities therein cited. It does not appear that this particular error was called to the attention of the trial court and therefore the cost of this appeal will be taxed against appellants. Snyder v. Compton, Tex.Civ. App., 29 S.W. 73.

The judgment of the trial court will be reformed, as above indicated, and as reformed, affirmed.

Appellants' motion for rehearing is granted to the extent indicated, and in all other respects it is overruled.