**W. B. CARIKER, Guardian of the Estate of James William Cariker, a Minor, Appellant,**

v.

**H. B. KNOX, Appellee.**

No. 12787.

Court of Civil Appeals of Texas.

Galveston.

Feb. 24, 1955.

Rehearing Denied March 17, 1955.

Earle P. Adams and Adams & McReynolds, Crockett, James F. Parker, Beaumont, for appellant.

Kennedy & Granberry and C. W. Kennedy, Jr., Crockett, for appellee.

HAMBLEN, Chief Justice.

W. B. Cariker, Guardian of the Estate of James William Cariker, a minor, as plaintiff, filed this suit in the District Court of Houston County, against H. B. Knox, as defendant, for title and possession of certain land lying partly in the G. H. Prewitt Survey and partly in the M. A. Paulson Survey, in Houston County. The defendant disclaimed as to all of the land described which lay west of a line described in his answer, and filed a plea of not guilty as to any land lying east of such line. Trial was to the court without a jury, and upon the close of the evidence, the court rendered judgment for the plaintiff as to all land lying west of the line described in defendant's answer, as to which defendant had disclaimed, and rendered judgment that plaintiff take nothing as to the land lying east of such line, as to which defendant had joined issue by his plea of not guilty.

■■■ In his original brief, appellant attacks the take nothing portion of the trial court's judgment in one point directed to the asserted error of the court in rendering such judgment when the undisputed facts showed that appellant had possession of the land prior to the entry by appellee who showed no title in himself. We think this point must be overruled for two reasons. From our review of the evidence, the facts, even if sufficient to raise the issue of prior possession, do not compel a finding favorable to appellant, consequently this Court is bound by the findings of the trial court, adverse to him upon that issue. Furthermore, prior possession, even if proven, does no more than give rise to a presumption of ownership, to rebut which, does not require appellee to show title in himself, as impliedly contended in appellant's stated point of error, but merely requires appellee to show a lack of title in appellant. Butler v. Borroum, Tex.Civ.App., 218 S.W. 1115, and Lund v. Doyno, Tex.Com.App., 91 S.W. 2d 315. It requires no citation of authority for the proposition that the plaintiff in the action of trespass to try title must recover, if at all, upon the strength of his own title. For reasons which we will attempt to point out, it is our opinion that even if it could be successfully contended that appellant conclusively established possession of the land prior to the entry by appellee, the presumption of ownership to which that possession would give rise, has been rebutted by evidence which supports the take nothing judgment entered by the trial court.

■■ The prior occupancy and possession upon which appellant relied consisted of the enclosure of the land by W. P. Cariker, appellant's predecessor in title, by a fence erected at least eight years before appellee's entry on the land, and the use of the land so enclosed for grazing purposes through tenants. The entry by appellee occurred in June of 1953, at which time appellee Knox tore down the Cariker fence along the east boundary of Cariker's enclosure, and erected a new fence approximately parallel to the Cariker fence, but some 100 varas more or less westwardly thereof. The land between these two fences is that in dispute. Appellant offered testimony by several witnesses relative to the asserted enclosure of the land. At the conclusion of the evidence, the trial court made findings of fact, among which the following are material to the issue of prior possession:

"14. At the time W. P. Cariker built the fence referred to in Finding No. 12, he also built fences to completely enclose some land lying westerly thereof, but said fence did not enclose all of the land described in the deed referred to in Finding No. 5, nor did it enclose all of the land described as tract number (1) in paragraph II of Plaintiff's First Amended Original Petition; nor did said fense completely enclose the land described as tract Number (2) of Paragraph No. II in Plaintiff's First Amended Original Petition.

"15. Immediately after W. P. Cariker built the fence referred to in Finding No. 14 he asked Mr. Karl Leediker to use the land around which he had constructed a fence for grazing and from that time on

Mr. Leddiker did use such land for grazing whenever his cattle were in there.

"16. The fence along the line 'H', 'a', 'J', 'b' and 'B' referred to in Finding No. 12 was down in places many times between the time it was built and June 7, 1953, and was down in several places on June 7, 1953.

"17. The rest of the fence referred to in Finding No. 14 was down in places from time to time between the time it was built, June 7, 1953, and that part thereof along the road and between the 'Cariker' land and 'Leediker' land was torn down by people going in and out and some of the wire was taken off and some of the wire is there; and said fence was not maintained.

"18. Within the time referred to in Finding No. 17 a person or persons unknown tore down the fence referred to in Finding No. 14 for a hundred yards and removed from within said fence a little house that had been erected by W. P. Cariker.

"19. Such use as was made by Karl Leediker of the land referred to in Finding No. 14, and after the time referred to in Finding No. 15, was grazing by cattle in connection with and as a part of the grazing by said cattle of approximately 2500 acres of land, some owned by the said Karl Leediker and some not owned by him.

"20. During all of such time the fences around such 2500 acres were down in places from time to time, including being down on the South side thereof, and on the said South side of said 2500 acres there was a period as long as a month that such fence was not down."

Upon such findings, the trial court made the following material conclusions of law:

"6. The use made by Karl Leediker, as the tenant of Plaintiff and/or his predecessor in title, of land easterly of the line 'V', 'W–1', 'X' and 'Y' as delineated on the map 'P–3' in evidence was not of that exclusive nature necessary to entitle Plaintiff to recover such land on the theory of prior possession.

"7. The use made by Karl Leediker, as the tenant of Plaintiff and/or his predeces-

sor in title, of land easterly of the line 'V', 'W–1', 'X' and 'Y' delineated on the map 'P–3' in evidence was not of that continuous nature necessary to entitle Plaintiff to recover such land on the theory of prior possession.

"8. Such use as was made by Karl Leediker of land lying easterly of the line 'V', 'W–1', 'X' and 'Y' on the map identified as 'P–3' in evidence wasn't shown by Plaintiff to have continued for any definite period of time."

For clarity, it should be stated that the line "V", "W–1", "X", and "Y", referred to in the stated conclusions of law, represents the location of the Knox fence.

After reviewing the statement of facts, we conclude that the factual findings of the trial court are supported. The following excerpts from the testimony of witnesses offered by appellant are deemed sufficient to support our conclusion.

H. B. Knox, appellee, called as an adverse witness, testified:

"Q. You have been answering as to the salvage value; what was the fence worth standing? A. Nothing. The fence was down in twenty-five places.

"Q. On the east line at the time you tore it down? A. Yes; you can ask other people and they will say the same thing.

"Q. Didn't you know the fence had just been repaired by Mr. Scott? A. No; impossible."

Karl Leediker testified:

"Q. In using it for pasture, how did you do that? Did you keep the fences up between your and his land? A. No; people going through there on that road. He built a little house on that road and somebody came over night and took the house away and they tore the fence down a hundred yards. People tore it down going in and out, but the wire is there and some taken off.

"Q. That was the fence between your property and the Cariker property? A. Yes, sir."

\* \* \* \* \* \*

"Q. How was the fence kept? A. At times it was in good repair and sometimes it was not. Sometimes trucks of pulpwood would tear it down and I wouldn't know it until Mr. Bruton told me and I would get the cattle out and fix it. That was two or three times.

\* \* \* \* \* \*

"Q. Many times the fences in the general vicinity of the line between Cariker and Bruton would be down? A. Yes; sure would, but I would hear about it quick."

Clinton Scott testified:

"Q. What was the condition of the fence before you repaired it on the east? A. It had been cut in several places and they could get the cows back and forth across it."

We feel that this testimony, and the inferences reasonably to be drawn therefrom, amply supports the trial court's stated findings. The court's conclusions that occupancy of the type proven by appellant did not entitle him to recover under the theory of prior possession appears to be correct. Lynn v. Burnett, 34 Tex.Civ.App. 335, 79 S.W. 64; Lund v. Doyno, Tex.Com.App., 91 S.W.2d 315; Canales v. Clopton, Tex. Civ.App., 145 S.W.2d 933; Dawson v. Tumlinson, 150 Tex. 451, 242 S.W.2d 191.

■ The stated findings and conclusions are sufficient, in our opinion to support the judgment appealed from, and to require an affirmance thereof. However, one other consideration should be mentioned. By counter point appellee contends the filing by appellant of an abstract of title constitutes a judicial admission that he relies upon the chain of title therein set out, and precludes him from relying on the theory of prior possession. We do not understand such to be the law, nor do we consider the authorities cited by appellee to support such proposition. However, we do feel that the record before us sufficiently rebuts the presumption of ownership which appellant's prior possession, even if proven,

might otherwise give rise to, and thus supports the judgment appealed from.

Appellant's proof was not limited to proof of prior possession. In addition, appellant offered in evidence a deed from Mose Bromberg and D. A. Nunn to W. P. Cariker, dated June 24, 1943, conveying the land described in appellant's trial pleading. In one of the descriptions in such pleading, the land sued for is expressly identified as being the same land conveyed by the aforementioned deed. The evidence consisting of the general offer of this instrument, the testimony of witnesses relative to the entry by appellant's predecessor in title under such deed, particularly that of W. B. Cariker, the son of grantee therein, and guardian of the minor appellant, supports, if it does not compel, the conclusion that that deed describes the land of which appellant alleged he was the owner in fee simple. Since this deed was not connected with the sovereignty, it does not prove a record title in appellant. But it does have the legal effect of establishing that in so far as record title is concerned, appellant is limited to the land described in the deed. Appellant then offered the testimony of the witness, Staley W. Mims, identified as a qualified land surveyor. This witness unequivocally testified that the easterly boundary line of the land described in the deed, when located on the ground, was identical with the line upon which the Knox fence was erected, with respect to which appellee disclaimed interest in all land west thereof, and pleaded not guilty to the alleged trespass on land lying east thereof. In other words, this witness testified that the deed described no land lying east of the Knox fence. This witness was offered by appellant, vouched for by him, and appellant is bound by his testimony. Such proof is sufficient, in our view, to rebut the presumption of ownership which would result from prior possession, even if proven.

By amended brief, permission to file which has been granted, appellant presents fifteen additional points of error. These points are directed to the asserted error of the trial court in making certain findings of

fact, and the amendment appears to have been filed for the purpose of avoiding the conclusive effect of the trial court's findings in the absence of an exception thereto. We have already discussed the support in the record for those findings and conclusions which are determinative of this appeal. Appellant's additional points are accordingly overruled.

Affirmed.

CODY, J., not sitting.